UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NORMAN QUARTERMOUSE,                                                                     Plaintiff,

v.                                                                    Civil Action No. 3:19-cv-264-DJH-RSE

BULLITT COUNTY FISCAL COURT and
ANGELA GREENUP,                                                                       Defendants.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

A police officer found Plaintiff Norman Quartermouse's emaciated coonhound running loose on an interstate highway outside of Shepherdsville, Kentucky. (Docket No. 1, PageID.3; D.N. 57-2, PageID.339)  The next day, Bullitt County Animal Control Officer Angela Greenup obtained a warrant to inspect Quartermouse's property, where she took possession of several unlicensed and unvaccinated dogs that appeared to be in poor health. (D.N. 57-2, PageID.340–41)  Some of those dogs were put up for adoption, while the coonhound's ailments required euthanasia. (*Id.*, PageID.341)  Quartermouse alleges that Greenup's search of his property and her seizure of his dogs violated his rights under the Fourth Amendment. (D.N. 1, PageID.5–6)  He also asserts state-law claims of conversion and fraud and seeks to hold Defendant Bullitt County Fiscal Court liable for Greenup's allegedly tortious conduct.[1] (*Id.*, PageID.4–7)  Greenup and Bullitt County now move for summary judgment on all of Quartermouse's claims. (D.N. 57)  For the reasons explained below, the Court will grant the defendants' motion as to Quartermouse's Fourth Amendment claim and decline to exercise supplemental jurisdiction over his remaining state-law claims.

---

[1] In Kentucky, a "fiscal court" is equivalent to a county government.  *See* Ky. Const. § 144.

1

**I.**

**A.**

The following facts are derived from Quartermouse's verified complaint (D.N. 1) and the "cit[ations] to particular parts of materials in the record" found in Greenup and Bullitt County's summary-judgment motion (D.N. 57-1).[2] Fed. R. Civ. P. 56(c)(1)(A); *see Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (noting that "statements in a verified complaint" that are based on personal knowledge "may function as the equivalent of affidavit statements for purposes of summary judgment").

On April 8, 2018, a police officer picked up a female coonhound that was running loose on I-65 outside of Shepherdsville, Kentucky, and brought the dog to the Bullitt County animal shelter. (D.N. 1, PageID.3; D.N. 57-2, PageID.338; *see* D.N. 57-6)  Greenup, who at the time was the Director of the Bullitt County Animal Control Department, observed that the coonhound was "extremely emaciated" and suffered from a "severe cough."[3] (D.N. 57-2, PageID.338–39; *see* D.N. 57-6)  Pictures of the dog confirm that her ribcage was easily discernible through her skin. (D.N. 57-7)  There were no county records indicating that the coonhound was licensed or had

---

[2] In his response to the defendants' summary-judgment motion, Quartermouse seemingly supports his factual assertions with citations to depositions. (*See, e.g.*, D.N. 64, PageID.473, 477–78)  But he did not attach any deposition transcripts to his response, nor are those transcripts found elsewhere in the record.  Because they lack support in the record, many of the "facts" in Quartermouse's response are thus mere assertions that the Court need not consider.  *See Krueger v. City of Eastpointe*, 452 F. Supp. 3d 679, 692 n.1 (E.D. Mich. 2020) ("Mere assertions included in a summary judgment brief are not admissible evidence and the court will not consider them." (citing Fed. R. Civ. P. 56(c))).  The Court notes, however, that accepting Quartermouse's factual assertions at face value does not change its resolution of the present motion.

[3] In Kentucky, an "[a]nimal control officer" is an "individual who is employed or appointed by . . . [a] city, county, urban-county, charter county, or consolidated local government to enforce the provisions" of Kentucky's animal-control and animal-cruelty laws as well as "local animal control ordinances." Ky. Rev. Stat. § 258.095(8)(a).  The record indicates that Greenup was appointed Director of the Bullitt County Animal Control Department in October 2017. (D.N. 57-2, PageID.338)

2

received a rabies vaccination.[4] (D.N. 57-2, PageID.339) A tag on the dog's collar identified Quartermouse as her owner and listed Quartermouse's phone number. (D.N. 1, PageID.3; D.N. 57-2, PageID.339; *see* D.N. 57-6)

The next day, Greenup applied for a warrant to search Quartermouse's property for "other dogs" that, according to Greenup, she "had reason to believe . . . were being kept and neglected by Quartermouse in violation of local ordinance[s] and [state] animal cruelty statutes." (D.N. 57-2, PageID.340) Greenup stated the following in her search-warrant affidavit:

> From April 2017 through April 2018, the Bullitt County Animal Shelter was informed by neighbors of [Quartermouse] that malnourished and neglected animals were being kept on the property. [Quartermouse] is the resident of said property. As many as 30–40 dogs are reportedly being housed on the property. Bullitt County Animal Shelter received four separate phone calls reporting this information regarding the dogs. On April 8, 2018, the Shepherdsville Police Department recovered a neglected dog on I-65 south. The dog had tags which indicated it belonged to Mr. Quartermouse. The dog was extremely malnourished.

(D.N. 57-12, PageID.430) A Bullitt District Court judge subsequently issued a warrant authorizing Greenup to search Quartermouse's "house" and "adjoining land" for "approximately 30–40 neglected dogs." (D.N. 57-13, PageID.431)

Greenup executed the search warrant later that day and found "numerous unlicensed and unvaccinated dogs" on Quartermouse's property, several of whom appeared to be in poor health. (D.N. 57-2, PageID.340) According to Greenup, the dogs "did not have adequate food, bedding[,] or shelter[,] and several were tethered to trees without a safe swivel on the lead." (*Id.*) The record indicates that during the search, Quartermouse signed forms relinquishing ownership and custody

---

[4] Dog owners are required by Kentucky law to vaccinate their dogs against rabies, and all dogs must have a "rabies tag" attached to their collars indicating that they have been vaccinated. Ky. Rev. Stat. § 258.015(1). According to the ordinance attached to Quartermouse's response, Bullitt County further requires all dog owners to license their dogs with the Department of Animal Control and Protection (D.N. 64-1, PageID.490). *See* Ky. Rev. Stat. § 258.135(1) ("The governing body of each county may establish an animal licensing program by ordinance.").

3

of seven adult dogs and five puppies to the Bullitt County Animal Shelter. (D.N. 57-9; *see* D.N. 1, PageID.3; D.N. 57-2, PageID.340; D.N. 57-14, PageID.435) Greenup then took possession of these dogs and transported them to a local animal hospital to receive treatment and vaccinations. (D.N. 57-2, PageID.341; *see* D.N. 57-10) Six of the adult dogs were eventually returned to Quartermouse, while the five puppies and their mother were put up for adoption. (D.N. 57-2, PageID.341; *see* D.N. 1, PageID.4; D.N. 57-11) As for the coonhound, a veterinarian determined that a large internal mass was causing her pain and breathing troubles, and she was euthanized on April 11, 2018.[5] (D.N. 57-2, PageID.341; *see* D.N. 57-8, PageID.381–84)

Following Greenup's inspection of his property, Quartermouse was criminally charged with cruelty to animals in the second degree and violations of county ordinances requiring that dogs be licensed and vaccinated for rabies. (D.N. 1, PageID.4; D.N. 57-2, PageID.341; *see* D.N. 57-3) Quartermouse pleaded guilty to the ordinance violations in February 2020, and the animal-cruelty charge was dismissed. (D.N. 57-4)

**B.**

Quartermouse brought this action on April 8, 2019, alleging under 42 U.S.C. § 1983 that Greenup's search of his residence and seizure of his dogs violated his rights under the Fourth Amendment. (D.N. 1, PageID.5–6) He also asserts state-law claims of conversion and fraud against Greenup and seeks to hold Bullitt County liable for her allegedly tortious conduct.[6] (*Id.*, PageID.4–7) Greenup and Bullitt County initially moved for summary judgment in September

---

[5] Kentucky law provides that if a dog that is impounded by an animal control officer "has an injury or physical condition which causes [it] to suffer, the animal control officer . . . may immediately destroy the dog by the most reasonable and humane means then available." Ky. Rev. Stat. § 258.215(1).

[6] In addition to his § 1983 claim, Quartermouse alleges two separate counts of "theft and conversion," one count of fraud, and one count of "punitive damages." (D.N. 1, PageID.4–7)

4

2019 (D.N. 14), which the Court denied without prejudice as premature (D.N. 28). Following additional discovery, the defendants have again moved for summary judgment. (D.N. 57) Quartermouse responded, and the defendants replied. (D.N. 64; D.N. 66) The defendants' motion for summary judgment is now ripe for adjudication.

## II.

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "showing the absence of a genuine issue of material fact." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Once this burden is met, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Id.* Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a summary-judgment motion, a court must "accept all of the nonmovant's evidence as true and draw all reasonable inferences in [that party's] favor." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). "Conclusory statements unadorned with supporting facts," however, "are insufficient" to defeat summary judgment. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)). And if the nonmovant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," that fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2).

### III.

**A.**     **Quartermouse's § 1983 Claim Against Greenup**

The Court will first decide whether Greenup is entitled to summary judgment on Quartermouse's § 1983 claim against her.[7] (D.N. 1, PageID.5–6)  A plaintiff bringing a § 1983 claim must establish (1) "that he was denied a constitutional right" and (2) "that the deprivation was caused by a defendant acting under color of state law." *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).  Regarding the latter element, it is undisputed that Greenup acted under color of state law at all relevant times in this matter by exercising her authority as the Director of the Bullitt County Animal Control Department.  (*See* D.N. 1, PageID.2; D.N. 57-1, PageID.322–27) As for the first element, Quartermouse claims that Greenup violated his rights under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Quartermouse alleges that Greenup "unlawfully searched, seized[,] dealt with as her own[,] and destroyed property belonging to [him]." (D.N. 1, PageID.6)  More specifically, he argues in his response to the defendants' summary-judgment motion that Greenup violated his Fourth Amendment rights when she "seized [his] coonhound and euthanized it without either a final diagnosis as to its condition or [the] legal authority" to do so.  (D.N. 64, PageID.484) Quartermouse further claims that Greenup's search of his property was unlawful because she applied for and received a search warrant based on misrepresentations, "false information," and

---

[7] There is no dispute that Quartermouse sued Greenup in her individual capacity. (D.N. 1, PageID.2)  Greenup also construes Quartermouse's complaint as asserting official-capacity claims against her. (*See* D.N. 57-1, PageID.321–22)  Suing Greenup in her official capacity, however, "is the equivalent of suing [her] employer." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  Any official-capacity claims against Greenup will thus be treated as claims against Bullitt County. *Id.*; *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

allegations lacking "any indicia of reliability," and because she "intimidated" him during the search into signing forms that relinquished his ownership of certain dogs that Greenup removed from his residence. (*Id.*, PageID.483–85) As explained below, however, the record in no way suggests that Greenup's decision to euthanize the coonhound amounted to an unreasonable seizure in violation of the Fourth Amendment. And to the extent that Quartermouse's Fourth Amendment claim rests on the lawfulness of Greenup's search of his property, that claim fails as a matter of law because Greenup is entitled to qualified immunity. The Court will therefore grant summary judgment in Greenup's favor as to Quartermouse's § 1983 claim against her.

### 1. The Seizure of the Coonhound

The killing of a dog by law enforcement constitutes a "seizure" within the meaning of the Fourth Amendment. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016); *see White v. City of Detroit*, 38 F.4th 495, 498 (6th Cir. 2022) (noting that "an individual's dog . . . counts as an 'effect'" under the Fourth Amendment). And the Sixth Circuit has recognized "a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized." *Brown*, 844 F.3d 566. Assuming, then, that euthanizing the coonhound amounted to a seizure— which Greenup does not dispute (*see* D.N. 66, PageID.505)—that seizure violated Quartermouse's constitutional rights only if it was "unreasonable." *Id.*; *see White*, 38 F.4th at 498 ("All considerations accounted for, we ask: Was the seizure 'more intrusive than necessary?'").

In the § 1983 context, the plaintiff "bear[s] the burden of proving that [a] seizure was unreasonable." *Brown*, 844 F.3d at 568. Here, Quartermouse first argues, albeit impliedly, that Greenup's seizure of the coonhound was unreasonable because she "euthanized it without . . . a final diagnosis as to its condition." (D.N. 64, PageID.484) Yet the record shows that Greenup acted in accordance with a veterinarian's recommendation that the coonhound be euthanized

7

because a large internal mass was causing the dog pain and breathing problems.  (*See* D.N. 57-8, PageID.381; *see also* D.N. 57-2, PageID.341)  And Quartermouse offers no evidence undermining that recommendation or Greenup's reliance on it.  *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact[,] . . . the court may . . . consider the fact undisputed for purposes of [a summary-judgment] motion.").

Quartermouse also implies that Greenup acted unreasonably because she euthanized the coonhound without "legal authority" under Bullitt County's animal-control ordinances.  (D.N. 64, PageID.484; *see* D.N. 64-1)  As a general matter, however, whether Greenup strictly complied with state or local law has no bearing on whether she acted in accordance with the Fourth Amendment.  *See Reform Am. v. City of Detroit*, 37 F. 4th 1138, 1155 (6th Cir. 2022) ("The Fourth Amendment does not prohibit seizures that happen to have some technical legal defect under state law; it prohibits only those seizures that are *unreasonable*." (emphasis in original)).  In any event, the local ordinance that Quartermouse claims Greenup violated expressly provides that an animal control officer "may immediately destroy . . . by the most reasonable and humane means then available" any animal with "an injury or physical condition which causes [it] to suffer."  (D.N. 64-1, PageID.491; *see* D.N. 64, PageID.483–84)  And Quartermouse fails to explain how euthanizing the coonhound contravened that provision, let alone why that decision was unreasonable under the circumstances.[8]  *See Reform Am.*, 37 F.4th at 1155.

In sum, the record shows that in deciding to euthanize the coonhound, Greenup appears to have "acted reasonably at each turn."  *White*, 38 F.4th at 498.  And Quartermouse has failed to

---

[8] The Court need not decide whether Greenup actually complied with Bullitt County's animal-control ordinance or state law more generally.  It only notes that Quartermouse's claim that Greenup euthanized the coonhound "without . . . legal authority under the ordinance" (D.N. 64, PageID.484) is difficult to reconcile with the text of the very ordinance he cites.

"present sufficient evidence to permit a reasonable jury" to conclude otherwise. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (stating that summary judgment should be granted in favor of the movant under such circumstances). There is thus no genuine factual dispute as to whether Greenup violated Quartermouse's Fourth Amendment rights when she euthanized the coonhound, and his § 1983 claim therefore cannot survive summary judgment on that basis. *See Carl*, 763 F.3d at 595 (noting that a plaintiff suing under § 1983 "must establish that he was denied a constitutional right").

### 2. The Search of Quartermouse's Property

Quartermouse also claims that Greenup's search of his property violated his Fourth Amendment rights. (*See* D.N. 64, PageID.483–85) Greenup asserts in her summary-judgment motion that this claim must fail because she is entitled to qualified immunity (D.N. 57-1, PageID.327–32; *see* D.N. 4, PageID.19–20), and the Court agrees.

Qualified immunity protects state officers from § 1983 claims "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "[T]he plaintiff bears the burden of showing that [an] officer is not entitled to qualified immunity." *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020). The constitutional right at issue here is the Fourth Amendment's requirement that "a search warrant . . . be issued only 'upon probable cause.'" *Id.* at 648 (quoting U.S. Cont. amend. IV). Crucially, Sixth Circuit precedent offers a "complete" qualified-immunity defense to an illegal-search-and-seizure claim under § 1983 when the officers in question "relied on" a judicially issued warrant. *Novak v. City of Parma*, 33 F.4th 296, 305–06 (6th Cir. 2022) (involving a § 1983 claim challenging the validity of search and arrest warrants issued by state-court judges); *see Tlapanco*,

9

969 F.3d at 649. And here, there is no dispute that Greenup relied on a search warrant issued by a Bullitt District Court judge when she searched Quartermouse's property. (D.N. 57-13; *see* D.N. 64, PageID.474–75)

This complete qualified-immunity defense "has two exceptions," however. *Novak*, 33 F.4th at 306. "The first covers cases when an officer provides false information to obtain a warrant." *Id.* And the second exception applies if "the warrant is so lacking in indicia of probable cause[] that official belief in the existence of probable cause is unreasonable." *Id.* (quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Quartermouse invokes both in his response (*see* D.N. 64, PageID.483–84), but neither applies here. Regarding the first exception, Quartermouse contends that Greenup obtained her search warrant via misrepresentations and "false information." (D.N. 64, PageID.483) But he fails to identify which particular statements in Greenup's search-warrant affidavit were false (*see* D.N. 57-12), let alone offer evidence that suggests their falsity. *See Viet*, 951 F.3d at 823 ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). As for the second exception, Quartermouse claims that Greenup's search warrant was based on allegations that lacked "any indicia of reliability." (D.N. 64, PageID.483) But he points to no evidence in the record supporting this assertion. *See Viet*, 951 F.3d at 823. And even assuming that the question of whether Greenup's search-warrant affidavit established probable cause was a "close one," nothing in the record suggests that her reliance on a judicially issued search warrant was unreasonable, meaning she would still be entitled to a "complete" qualified-immunity defense. *Novak*, 33 F.4th at 306 (concluding that officers were entitled to qualified immunity "even if the warrants" at issue "were not supported by probable cause" because the officers' "reliance" on the warrants "was far from unreasonable" under the circumstances of the case).

In addition to challenging the validity of Greenup's search warrant, Quartermouse also insinuates that her search was unlawful because she "intimidated" him into signing forms that ostensibly relinquished his ownership of twelve dogs that Greenup removed from his property. (D.N. 64, PageID.485; *see* D.N. 1, PageID.3; D.N. 57-2, PageID.340–41)  But again, Quartermouse presents no evidence of this purported intimidation in the record. *See Viet*, 951 F.3d at 823. Moreover, the search warrant authorized Greenup to seize any "neglected dogs" she found on Quartermouse's property, regardless of whether Quartermouse formally relinquished his interest in them. (D.N. 57-13, PageID.431) Consequently, even assuming that the relinquishment forms were invalid like Quartermouse claims, the record indicates that Greenup's seizure of the dogs was nonetheless within the scope of her judicially issued warrant. (*See* D.N. 57-1, PageID.340–41 (indicating that Greenup seized dogs that appeared to be "in poor health")) And Quartermouse offers no evidence suggesting that Greenup's search was otherwise unreasonable. *See United States v. Gray*, 834 F. App'x 146, 149 (6th Cir. 2020) (observing that "[a]mong the grounds to deem a search and seizure constitutionally reasonable are if they are 'made pursuant to a warrant'"); *see also Tlapanco*, 969 F.3d at 647 (noting that a plaintiff seeking to overcome a qualified-immunity defense bears the burden of establishing "whether the officer" in question "committed a constitutional violation").

At bottom, state officers like Greenup "are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure," *Tlapanco*, 969 F.3d at 649 (quoting *Yancey*, 876 F.2d at 1243), and this qualified-immunity defense applies here. Accordingly, to the extent Quartermouse's § 1983 claim hinges on the lawfulness of Greenup's search of his property, his claim fails as a matter of law and thus cannot survive summary judgment. *See* Fed. R. Civ. P. 56(a).

**B.      Quartermouse's § 1983 Claim Against Bullitt County**

Quartermouse seeks to hold Bullitt County liable for Greenup's alleged violations of his Fourth Amendment rights. (D.N. 1, PageID.5–6; *see* D.N. 64, PageID.479–82) He pleads in his complaint that Bullitt County "is responsible for" those alleged violations "under the theory of respond[ea]t superior." (D.N. 1, PageID.6) But it is well settled that a municipality "may not be held liable under § 1983 on a respondeat superior theory."[9] *D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Bullitt County likewise cannot be held liable for the coonhound's euthanasia for the simple reason that § 1983 municipal liability cannot arise "in the absence of an underlying constitutional violation." *White*, 38 F.4th at 501.

Quartermouse also appears to argue in his response that Bullitt County can be held liable for Greenup's allegedly unconstitutional search of his property.[10] (*See* D.N. 64, PageID.481–82) A plaintiff asserting such a municipal-liability claim under § 1983 "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). And this policy-or-custom requirement can be satisfied by

---

[9] Quartermouse concedes in his response that Bullitt County cannot be held liable under a respondeat superior theory. (D.N. 64, PageID.479)

[10] The Court did not conclude above that Greenup's search of Quartermouse's property was constitutional as a matter of law, only that Greenup is entitled to qualified immunity on Quartermouse's illegal-search-and-seizure claim. *See Novak*, 33 F.4th at 305–06 (explaining that officers are entitled to a "complete" qualified-immunity defense when they reasonably rely on a judicially issued warrant, even if the warrant ultimately was not supported by probable cause). Accordingly, because the Court need not rule on the constitutionality of Greenup's search, Quartermouse's claim that Bullitt County is liable for that allegedly unlawful search cannot be dismissed due to the "absence of an underlying constitutional violation." *White*, 38 F.4th at 501; *see Novak*, 33 F.4th at 309–10 (assessing the merits of municipality-liability claims after concluding that related § 1983 claims against individual officers failed because of qualified immunity). Quartermouse's search-based municipal-liability claim nonetheless fails on other grounds.

showing "(1) the existence of an illegal policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.*

Quartermouse impliedly suggests that "an official with final decision making authority," *id.*—namely, Bullitt County's judge-executive—ratified Greenup's purportedly illegal search. (*See* D.N. 64, PageID.481)  But Quartermouse does not even allege, let alone show for purposes of surviving summary judgment, that the judge-executive "order[ed]" Greenup's search or approved her search after the fact. *Burgess*, 735 F.3d at 479.  Indeed, it appears that the then-judge-executive ordered Greenup to return most of Quartermouse's dogs to him after they received veterinary care and their required vaccinations (D.N. 1, PageID.3–4; D.N. 57-2, PageID.341), indicating that the judge-executive in no way "cause[d] or continue[d]" the constitutional harm that Quartermouse allegedly suffered as a result of Greenup's search. *Burgess*, 735 F.3d at 479.

Quartermouse also contends that Greenup was "inadequately trained" to serve as an animal control director (D.N. 64, PageID.481). *See Burgess*, 735 F.3d at 478 (noting that "the existence of a policy of inadequate training or supervision" can serve as the basis for a municipal-liability claim).  Such a failure-to-train claim, however, requires evidence of "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history" of constitutional violations and "was clearly on notice that [its] training . . . was deficient and likely to cause injury." *Id.* (internal alterations omitted) (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)).  And Quartermouse does not allege, let alone show for purposes of surviving summary judgment, other instances where Greenup or another Bullitt County animal-control officer conducted an unconstitutional search of a resident's property.  *See id.* (affirming the

dismissal of a failure-to-train claim because the plaintiffs "ha[d] not set forth *any* facts that there were prior instances of similar misconduct"); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Thus, even assuming that Greenup's search of Quartermouse's property violated his constitutional rights, Quartermouse has "failed to set forth sufficient facts to establish an unconstitutional custom or policy" on Bullitt County's part that caused that alleged violation. *Burgess*, 735 F.3d at 479. His § 1983 municipal-liability claim therefore fails as a matter of law, *id.*, and summary judgment will be granted on that claim in Bullitt County's favor. *See Celotex*, 477 U.S. at 322 (stating that summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to [its] case")

**C.     Quartermouse's State-Law Claims**

Quartermouse's remaining conversion and fraud claims arise under state law and were before the Court pursuant to its supplemental jurisdiction (D.N. 1, PageID.2–3). *See* 28 U.S.C. § 1367(a). Federal law provides in relevant part that a district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction. § 1367(c)(3). The Sixth Circuit "has held that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 905 (6th Cir. 2018) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). The decision whether to exercise supplemental jurisdiction over pendant state-law claims is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). And that discretion extends to every stage of litigation,

14

including summary judgment. *See Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011).

Accordingly, having concluded that summary judgment is warranted on Quartermouse's lone federal claim—the only basis for subject-matter jurisdiction here (*see* D.N. 1, PageID.2–3)—the Court declines to exercise supplemental jurisdiction over his remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) ("Because the district court dismissed [the plaintiff's] federal claims, the court could properly refuse to exercise supplemental jurisdiction over the pendant state law claims."). Those claims will therefore be dismissed without prejudice. *See Kentucky v. Marathon Petroleum Co. LP*, 464 F. Supp. 3d 880, 897 (W.D. Ky. 2020).

IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Greenup and Bullitt County's motion for summary judgment (D.N. 57) is **GRANTED** as to Quartermouse's § 1983 claim (Count III).

(2)  Quartermouse's remaining state-law claims (Counts I, II, IV, and V) are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

(3)  A separate judgment will be entered this date.

August 11, 2022

David J. Hale, Judge
United States District Court